SEYMOUR MORGAN *et al.*, Appellants, *v.* COLLINS & McCASLAND, Appellees.

### APPEAL FROM MORGAN.

In an action upon a promissory note, given for a mowing machine, which, it is said, was warranted to the purchaser as a good machine, etc., it is erroneous to instruct the jury "that, if they believe the contract was rescinded, or the warranty of the machine broken, that defendants would be entitled to recover whatever amount they may have paid on the purchase," since the machine may have been beneficial to defendants, or the defect may have been unimportant.

THIS was an action in assumpsit on two promissory notes of defendants to one Bosworth, assigned by him to the plaintiffs without recourse.   To which the defendants pleaded,

1st.   Non assumpsit and issue.

2nd.   Notes made to Bosworth in consideration of sale and delivery, by plaintiffs, of a certain reaping and mowing machine, which, before commencement of suit on notes, was returned, accepted, and contract cancelled.

3rd.   Notes made to Bosworth in consideration of sale and delivery, by plaintiffs, of reaping and mowing machine, which was warranted to be a good machine, and that, after fair and repeated trials, it proved to be worthless and valueless, and was returned and delivered before commencement of suit to plaintiffs, and was by them accepted.

4th.   That plaintiffs, as manufacturers and vendors of the machine in controversy, for $188 sold and delivered the same to defendants, who paid $35 cash, and gave notes sued on in this case ; that machine was warranted to be a good machine ; that, on trial, it was not good, and machine was returned to and received by plaintiffs, on account of its failure to perform as warranted.

5th.   That plaintiffs were indebted to defendants $300, special damages by reason of breach of warranty of machine— charging $35 cash paid, $10 for repairing machine, and $255 damages for breach of warranty.

To these pleas were filed replications as follows :

To 2nd, 3rd and 4th pleas, that the machine was not received and accepted.

To 5th plea, no indebtment, as alleged in said plea.

To 2nd plea, contract of sale not cancelled.

To 3rd and 4th pleas, machine not warranted, as alleged in said pleas.

To 3rd plea, that machine did not, upon fair trial, prove wholly worthless and valueless.

To 4th plea, that machine did not fail to perform, as alleged in said plea.

To 2nd, 3rd and 4th pleas, that consideration of notes had not wholly failed.

There was a verdict and judgment for defendants for $35— motion for new trial overruled.

Plaintiffs produced notes sued on, and rested.

Defendants proved by Dixon that he, as agent for plaintiffs, in the summer of 1856, sold and delivered to defendants, on terms of printed warranty, the machine in controversy for $35 cash, and notes sued on. After season of 1856 for reaping and mowing, they brought back the machine, and requested witness to receive it back, stating it did not answer purpose. This he refused to do, and did not receive it, nor did he intend to do so, or say anything to lead them to suppose that it would be taken back; did not show defendants where to unload machine; said they were determined to leave it; he told them to put it where they pleased, he would not receive it. Witness did not examine the machine, nor did he or any one in his employment have anything to do with it, or any part of it, after it was returned. It was in parcels, and was left by defendants on a lot west of the office, among other machines, and parts of machines, belonging to plaintiffs and others. Witness not present when and where machine was unloaded. The machine now lies where it was unloaded. Upon cross-examination, witness stated that he sold machine on terms of printed warranty, and that he had authority to sell on no other terms. Witness stated that when machine is delivered at time of sale, the above instrument is not signed by purchaser, and the cost of transportation is added to the price of machine. Plaintiffs admitted that they were manufacturers of the machine.

*P. Cassell* testified that defendant Collins came back two or three weeks after purchase of machine for part of mowing attachment that was not delivered at time of sale. This was about mowing season—machine would not mow without it. Witness helped Collins select the part wanted.

*I. I. Hood* testified: Was present when machine was brought back. McCasland asked where he should put it. Dixon said might as well put it down west. Machine unloaded west of office, where there were other machines. Mowing season was then pretty well over, and witness was then selling his wheat.

*M. McMurray* testified that he thought he was present when defendants came to Dixon's office. McCasland once and again asked where he should put machine. Dixon said they could put it down there, pointing west. McCasland said the machine was of no account. Witness helped unload the machine. When

they came back, Dixon told McCasland and Collins to settle with Eno. McCasland claimed of Eno the notes and money paid. Eno refused to give them up, and to receive machine back. In unloading machine, witness noticed that the socket was broken; thinks he saw same machine at Graves' shop, in Jacksonville, in July, 1857, where other machines of the plaintiffs were for repair. Judges it to be the same machine, because socket was broken. Never saw the machine but on the occasions referred to, in 1856 and 1857; has since seen a slide out of the machine in Nathaniel Johnson's reaping and mowing machine; judges so because the slide had been broken and repaired; does not know how machine came to be at shop.

*S. L. Graves* testified that he is a machinist—shop in Jacksonville. McMurray was at his shop in harvest of 1857. W. L. Bosworth had previously spoken to witness about repairing some machines for the plaintiffs. Three or four of these machines were afterwards sent there; by whom, witness does not know. Other machines there at same time; don't know anything about machine in question; don't recollect that any of them had broken socket; has no recollection about any slide; machines brought for repair in harvest of 1857. Plaintiffs' agent paid witness for repairs on their machines.

*L. Hays* testified that defendants had one of plaintiffs' machines in 1856; thinks he could identify it. Socket was broken while defendants were mowing for witness. A wheel had worn into one of pieces of woodwork. Has examined all the machines now on lot near Eno & Dixon's office since he came to court. Did not find machine in controversy there, unless it had been repaired. Did not see machine at work, except when mowing for him; worked badly; clogged and caught on point of separator, causing it to press down and run into the ground. Collins had previously cut five or six acres of his grass with the machine. Did not know cause of clogging at the point of separator. 'Tis a piece of iron-bound wood work, the forward part of it being most elevated, and its office is to separate wheat or grass, in front of sickle, from wheat or grass adjoining. Machine did not do as mower; one and a half acres of grass cut for witness when socket was broken.

*I. Bennett* testified that he employed defendants to cut his wheat with machine in controversy. Didn't answer purpose of a good machine. It cut 14¾ acres of wheat in five or six days, running over some and breaking down some. Considers machine worthless as a reaper.

*I. T. McCasland* testified that he worked with machine all the time it was used; that it clogged badly at point of separator. The clogging pressed the point of the separator down, and ran

the machine into the ground. Does not know the cause of clogging. The point of the separator is elevated a foot or so from the ground, and is made to divide the grain standing in front of the sickle from the other standing grain or grass. Defendants cut with the machine from 20 to 25 acres of wheat for Collins, 14 or 15 acres for Bennett, 6 or 8 acres for another neighbor, and 5 or 6 acres of grass for Collins, and some for Hays — not much. Considers the machine worth nothing as a reaper or mower.

In behalf of plaintiffs,

*N. Johnson* testified that the machine was put together by defendant McCasland and witness, on witness' premises, fore part of July, 1856. When put together, McCasland hitched his team to it, and run it 75 or 80 rods through witness' wheat, to try it. It worked well for a new machine—full as well as witness' on first trial. Was well made and put together, and witness could discover no difference between it and one owned by witness. Had purchased one of same kind from plaintiffs, excepting omission of mowing attachment. When he commenced using it, having had no experience, had some trouble with it, but, during past harvest, had cut from 12 to 14 acres per day. Considered defendants' machine, when he saw it, as good as his. If wheat leaned over very much, separator might clog, but can't conceive how the separator could clog and be pressed down in manner spoken of by some of the witnesses. Required weight of three to four hundred pounds to press the separator down in manner spoken of. Broke a small slide in his machine, and went to shop of Graves to get another. Found one among some old irons, and used it; like all other slides for such machines. Had been broken just like one on his own machine, and like every one he has seen on a machine much used. Repaired by riveting it, in the same manner that others were repaired. On cross-examination, said that the machine clogged three or four times in the cutting of 75 or 80 rods through his wheat. Bosworth, agent of plaintiffs, was present when defendants commenced putting machine together, but left before machine was started. Witness was not a mechanic.

*E. I. Eno* testified that defendant McCasland, after harvest season of 1856, came to him in office in Jacksonville, occupied by him and Dixon, and wanted witness to receive back machine, and give up notes, which he refused. Doesn't know whether machine had been then unloaded or not. Was left on lot of witness, west of office lot, where other machines, and parts of machines of same sort, and other sorts, were lying. All of them had been used, and were mixed together. Was agent for

Atkins' machine.  Witness and Dixon aided each other in their respective agencies, and divided their pay.

*W. L. Bosworth* testified that he was general agent of plaintiffs for sale of their machines.  Was at office of Eno & Dixon when machine in controversy was sold on terms of printed warranty, which was produced by Dixon, and was read over by defendants at the time they examined the machine, and it was sold to them on the terms of the warranty.  Defendants gave note, at one day's date, in lieu of cash, etc.  Printed terms of sale not signed by purchasers where machine is delivered at time of sale.  Machines all of same pattern—precisely alike—any part of a machine fitting others equally well as the one in which it is used.  Separator is smooth, and terminates in a point, and cannot be pressed down so as to throw the point into the ground with less than three to four hundred pounds weight upon it.  Saw defendant Collins in October, 1856, and applied to him for payment of $53 note.  Collins said they had cut their own and some of their neighbors' harvest with machine, but McCasland found some fault with it, and wanted witness to take machine back, which he refused, and insisted on payment of note.  Collins desired witness to make no cost upon note until he could see McCasland.  Saw Collins afterwards, who informed witness they had determined not to pay notes.

In summer of 1857, there were a number of machines, and parts of machines, of plaintiffs, of same kind as one sold to defendants, lying upon lot west of Eno & Dixon's office, as also other kinds, in pieces, as they had been unloaded, all being second hand machines, promiscuously mixed.  Witness made arrangements with Graves to repair such of plaintiffs' machines as might be sent to his shop, and in summer of 1857, witness sent a man to Jacksonville, with instructions to select out and take all of plaintiffs' machines, and parts of machines, lying in the lot, except the machine returned by defendants, and take them to Graves' shop.  Witness, as agent, was occasionally at Jacksonville, and was not there when machines were removed to shop.  One machine, or rather all the parts of one machine, were left upon lot as machine sold to defendants, and is there still.  It is of the same pattern and kind, and as little damaged by use, and as good a machine as any that were there, and has been known ever since as the Collins and McCasland machine.  Witness was not at Jacksonville when defendants returned machine, and knows of no marks to identify it.  Never ordered, nor knows of the machine in controversy being removed.  The notes sued on were erroneously made payable to witness.

The foregoing was all the evidence offered in the case.

The court, WOODSON, Judge, presiding, then gave the following instructions to the jury, in behalf of the plaintiffs:

"If the jury believe, from the evidence, that the reaping and mowing machine was sold by and upon the terms of sale and warranty contained in the printed form offered in evidence, the jury will find for the plaintiffs the amount of the notes and interest, unless the defendants have proven that, upon failure of the machine to perform as warranted, they gave immediate notice of such failure to plaintiffs' agent, or that the machine has been received back and accepted by the plaintiffs or their agent."

"If the jury believe, from the evidence, that the printed warranty offered in evidence was a part of the contract of sale of the reaping and mowing machine, then the defendants are bound by the terms of said printed warranty, and if they have failed on their part to comply with said printed warranty, then the plaintiffs are entitled to recover the amount of the notes sued upon, and the interest."

Which instructions were excepted to by the defendants.

The court then gave the following instructions on behalf of the defendants:

"If the jury believe, from the evidence in the case, that defendants returned said machine to plaintiffs' agent, and deposited said machine on the yard or premises used by plaintiffs for said machines, and afterwards, plaintiffs, by their authorized agent, assumed to exercise, and did exercise, acts of ownership or control over said machine, by removing the same to the shop of the witness Graves, and having the same repaired, such acts of ownership amount to an acceptance of said machine by plaintiffs, and the verdict should be for the defendants."

"If the jury believe that the contract was rescinded, or the warranty of the machine broken, the defendants are entitled to recover from plaintiffs whatever amount of money they may have paid upon the purchase."

To which instructions for defendants, the plaintiffs, by their counsel, excepted.

D. A. SMITH and H. B. McCLURE, for Appellants.

J. L. MORRISON, for Appellees.

CATON, C. J. The second instruction which was given for the defendants was erroneous. It is this: "If the jury believe that the contract was rescinded, or the warranty of the machine broken, the defendants are entitled to recover from the plaintiffs whatever amount of money they may have paid upon the pur-

chase." This consequence did not necessarily follow from either of the events supposed in the instruction. Suppose it be true, as the evidence very strongly tends to show, that the defendants used and enjoyed the machine for a considerable portion of the season, before they returned it, and before the time of the supposed rescision of the contract, and that during the time they used it it did good service, when properly managed, they would not be entitled to recover the full amount paid for the machine, allowing the plaintiffs nothing for the beneficial use it had been to the defendants, or for the deterioration in value of the machine, by reason of the wear and tear, or breakages, during such use. Again, admitting the other case supposed in the instruction, that the warranty of the machine was broken, it did not necessarily follow that they could recover back the full amount which they had paid for it. According to the doctrine of the instruction, no matter in how small or insignificant a particular the warranty may have been broken—no matter how valuable the machine might be, notwithstanding the particular failure, or how useful it may have been to the defendants, still, all this should count as nothing to the plaintiffs. Such is not the law.

The judgment of the Circuit Court must be reversed, and the cause remanded.

*Judgment reversed.*